**Affirmed and Opinion Filed March 29, 2024**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-23-01049-CV**

## IN THE INTEREST OF J.W. AND V.W., CHILDREN

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-22-00097-W**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Partida-Kipness

Following a two-day bench trial, the trial court terminated Father's parental rights to his children, J.W. and V.W.[1] The trial court found by clear and convincing evidence statutory grounds existed for the termination of Father's parental rights and termination was in the children's best interest. *See* TEX. FAM. CODE § 161.001(b)(1)(D)–(E), 161.001(b)(2). The trial court signed a termination order based on those findings and named the Texas Department of Family and Protective Services (the Department) the children's permanent managing conservator. Father appeals, bringing two issues: (1) the evidence is legally and factually insufficient to

---

[1] We refer to J.W. and V.W. by initials and use pseudonyms to refer to the children's family members to protect the children's identities. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

support the trial court's finding that termination was in the children's best interest, and (2) Father was denied effective assistance of counsel. We affirm.

## BACKGROUND

In November 2021, when J.W. was seven and V.W. was five, the Department received a report of domestic violence between Father and his girlfriend. On February 1, 2022, the Department received a report Father had physically abused V.W. Upon investigation, V.W. was observed with visible bruising to his face and neck. V.W. told EMS personnel Father had kicked him in the face. J.W. corroborated V.W.'s statements. Police arrested Father for injury to a child based on the incident. Father later pleaded guilty to a Class A misdemeanor charge of assault with a finding of family violence. The trial court deferred adjudication and placed Father on community supervision for two years. Conditions of the deferred adjudication included attendance of anger management and parenting programs, and a prohibition of contact with V.W. and any child seventeen years of age or younger.

The Department temporarily removed the children from the home and filed its petition for protection of the children, conservatorship, and termination of the parent-child relationship. The trial court granted the Department temporary custody of the children. The court later held the required fourteen-day adversary hearing. *See* TEX. FAM. CODE § 262.201(a). The Department, the court-appointed guardian ad litem, and a Dallas Court Appointed Special Advocate (CASA) appeared. Father did not appear, although duly notified of the hearing. Following the hearing, the court

–2–

determined there was a danger to the physical health or safety of the children caused by Father and a substantial risk of continuing danger if the children were returned to him. The court also found Father was unable to take possession of the children due to felony bond conditions which prohibited contact with the children. The court appointed the Department temporary managing conservator of the children, who were placed in foster care.

The trial court also ordered Father to submit to psychological/psychiatric evaluations, drug and alcohol assessments and testing, parenting classes, counseling sessions (including anger management), and a Battering Intervention and Protection Program (BIPP). Father was required to comply with the Department's service plan. *See* TEX. FAM. CODE § 263.106.

The trial court held a status hearing on April 1, 2022, and ordered the Department to continue as temporary managing conservator of the children. The court also approved the Department's recommended service plan for Father. That service plan required Father to obtain and maintain appropriate housing and employment, undergo a psychiatric evaluation and drug assessments and testing, and participate in parenting classes, individual and family counseling, and the BIPP.

The trial court conducted an initial permanency hearing on July 8, 2022. The court subsequently issued an order finding there was a continuing danger to the physical health or safety of the children and returning the children to Father was contrary to the children's welfare. The court held a final permanency hearing on

November 18, 2022, and again found there was a continuing danger to the physical health or safety of the children and returning the children to Father was contrary to the children's welfare.

The trial court appointed counsel as Father's attorney ad litem. Father filed his original answer and cross-petition on January 25, 2023, denying the allegations in the Department's petition and demanding a jury trial. A bench trial commenced on July 31, 2023.[2] The trial court received testimony from two witnesses: Jennifer Velazquez (the Department's caseworker) and Father. At the conclusion of trial, the court determined Father committed conduct as defined in section 161.001(b)(1)(D) and (E) of the Family Code and termination of the parent-child relationship between Father and the children was in the children's best interest.

On October 18, 2023, the trial court memorialized its rulings. The court found by clear and convincing evidence Father knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAMILY CODE § 161.001(b)(1)(D). The court also found by clear and convincing evidence Father engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *Id.* § 161.001(b)(1)(E). The court found that termination of the parent-child relationship was in the

---

[2] In its petitions, the Department also sought termination of Mother's parental rights. However, despite being duly notified and served, Mother did not appear or participate in the trial court proceedings, and she is not a party to this appeal.

–4–

children's best interest. *Id.* § 161.001(b)(2).[3] The court appointed the Department permanent managing conservator of each child. This appeal followed.

## STANDARD OF REVIEW

Because the natural right between a parent and his child is one of constitutional dimensions, termination proceedings must be strictly scrutinized. *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). In parental termination cases, due process requires the petitioner to justify termination by clear and convincing evidence. *Id.*; TEX. FAM. CODE § 161.001(b). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *K.M.L.*, 443 S.W.3d at 112 (quoting TEX. FAM. CODE § 101.007).

On appeal, we apply a standard of review that reflects the elevated burden at trial. *In re C.V.L.*, 591 S.W.3d 734, 748 (Tex. App.—Dallas 2019, pet. denied). Under both legal and factual sufficiency standards, we (i) consider all the evidence, (ii) defer to the fact-finder's credibility determinations, and (iii) determine whether the fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven. *Id*. "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *Id.* (quoting *In re A.C.*, 560 S.W.3d 624, 630-31 (Tex. 2018)).

---

[3]    The trial court also terminated Mother's parental rights.

When conducting a legal-sufficiency review of an order terminating parental rights, the reviewing court cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the fact-finder resolved disputed facts in favor of the finding. *Id.* at 748. We "consider all the evidence, not just that which favors the verdict," and we assume the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so. *Id.* We disregard all evidence a reasonable fact-finder could have disbelieved or found to have been incredible. *Id.* at 748-49.

When reviewing the factual sufficiency of the evidence supporting a termination finding, we ask whether, in light of the entire record, the evidence is such that a fact-finder could reasonably form a firm conviction about the truth of the State's allegations against the parent. *Id.* at 749. Further, the appellate court must consider whether the disputed evidence is such that a reasonable fact-finder could not have reconciled that disputed evidence in favor of its finding. *Id.* If the disputed evidence is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* In making this determination, we must undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *Id.*

## ANALYSIS

In two issues, Father argues: (1) the evidence is legally and factually insufficient to support the trial court's finding that termination was in the children's

best interest, and (2) Father was denied effective assistance of counsel. We begin by addressing Father's sufficiency challenges.

## I.     The Evidence Is Sufficient To Support the Best-Interest Finding

### A.     Predicate findings supporting termination

Texas Family Code section 161.001(b) allows for involuntary termination of parental rights if clear and convincing evidence supports that a parent engaged in one or more of the enumerated grounds for termination, and termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b)(1)-(2); *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam).

The trial court terminated Father's parental rights based on sections 161.001(b)(1)(D) and (E) of the Family Code. Section 161.001(b)(1)(D) requires clear and convincing evidence the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(D). Section 161.001(b)(1)(E) allows for termination of parental rights if clear and convincing evidence supports that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(E).

Father does not challenge the trial court's predicate findings for the termination of his parental rights under section 161.001(b)(1)(D) or (E). "Unchallenged predicate findings are binding" on the appellate court. *In re E.C.*, No.

05-23-00586-CV, 2023 WL 8733027, at *8 (Tex. App.—Dallas Dec. 19, 2023, no pet.) (mem. op.) (quoting *In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). This is also true where, as here, the predicate findings include endangerment findings under subsection (D) or (E), and the parent does not challenge any of the predicate findings. *See In re C.W.*, 586 S.W.3d 405, 407 (Tex. 2019) ("[W]hen a trial court makes a finding to terminate parental rights under section 161.001(b)(1)(D) or (E) *and the parent challenges that finding on appeal*, due process requires the appellate court to review that finding and detail its analysis.") (emphasis added); *see also In re N.M.R.*, No. 04-22-00032-CV, 2022 WL 3640223, at *3 (Tex. App.—San Antonio Aug. 24, 2022, pet. denied) (mem. op.) ("*When challenged*, due process requires us to review the trial court's findings under both sections 161.001(b)(1)(D) and (E) of the Texas Family Code.") (emphasis added). Accordingly, we address only the legal and factual sufficiency of the evidence to support the trial court's finding that terminating Father's parental rights was in the children's best interest. *See* TEX. FAM. CODE § 161.001(b)(2).

## B.    Best interest of the children

Father argues the evidence is legally and factually insufficient to support that termination of his parental rights was in the children's best interest. We disagree.

### 1)    Applicable law

A court may terminate parental rights if it finds by clear and convincing evidence that termination is in the best interest of the child. TEX. FAM. CODE §

161.001(b)(2). The best-interest element is child-centered and focuses on the child's wellbeing, safety, and development. *In re M.K.*, No. 05-23-00090-CV, 2023 WL 4229818, at *5 (Tex. App.—Dallas June 28, 2023, no pet.) (mem. op.). In reviewing a fact-finder's best-interest finding, we consider several nonexclusive factors:

> (1) the desires of the child;
>
> (2) the emotional and physical needs of the child now and in the future;
>
> (3) the emotional and physical danger to the child now and in the future;
>
> (4) the parental abilities of the person seeking custody;
>
> (5) the programs available to assist the person seeking custody in promoting the best interest of the child;
>
> (6) plans for the child by the person seeking custody;
>
> (7) the stability of the home or proposed placement;
>
> (8) the acts or omissions of the parent that may indicate the parent-child relationship is not a proper one; and
>
> (9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors focus on the best interest of the child, not the best interest of the parent, and are not exhaustive. *In re E.C.*, 2023 WL 8733027, at *9 (citing *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ)). A best-interest finding need not be supported by evidence of every *Holley* factor, particularly if there is undisputed evidence the parental relationship endangered the child's safety. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding termination is in the child's

best interest. *In re E.C.*, 2023 WL 8733027, at *9. On the other hand, the presence of scant evidence relevant to each factor will generally not support such a finding. *Id.* (citing *In re C.H.*, 89 S.W.3d at 27). The same evidence can be relevant to both section 161.001(b)(1) termination grounds and the child's best interest. *Id.* (citing *In re D.W.*, 445 S.W.3d 913, 925 (Tex. App.—Dallas 2014, pet. denied)).

The Family Code lists thirteen factors courts also consider in determining whether termination of parental rights is in the child's best interest. TEX. FAM. CODE § 263.307(b); *see In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Relevant here, those factors include:

> (1) the child's age and physical and mental vulnerabilities;
>
> (3) the magnitude, frequency, and circumstances of the harm to the child;
>
> (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
>
> (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
>
> (9) whether the perpetrator of the harm to the child is identified;
>
> (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
>
> (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
>
> (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE § 263.307(b). Although there is a strong presumption maintaining the parent–child relationship serves the child's best interest, there is also a presumption that promptly and permanently placing the child in a safe environment is in the child's best interest. *In re M.K.*, 2023 WL 4229818, at *5.

### 2) Application of the law to the facts

#### a. Children's age, vulnerabilities, needs, and desires

The need for stability and permanence is an important consideration for a child's present and future physical and emotional needs. *In re J.D.B.*, 435 S.W.3d 452, 468 (Tex. App.—Dallas 2014, no pet.). Generally, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re D.W.*, 445 S.W.3d at 928. A parent who lacks the ability to provide a child with a safe and stable home is unable to provide for a child's emotional and physical needs. *In re L.M.N.*, No. 01-18-00413-CV, 2018 WL 5831672, at *21 (Tex.

App.—Houston [1st Dist.] Nov. 8, 2018, pet. denied) (mem. op.) (citing *In re G.M.G.*, 444 S.W.3d 46, 60 (Tex. App.—Houston [14 Dist.] 2014, no pet.)).

At the time of trial, J.W. and V.W. were nine and seven years old, respectively. No testimony or other evidence from the children was introduced, so there is little known about the children's desires. Velazquez testified the children were "doing really well" in their foster home, while Father testified his sons love him. Accordingly, the evidence regarding the children's desires is not probative. As to the children's vulnerabilities and needs, Velazquez testified the children were struggling academically when first removed from Father's custody and placed in the foster home. Since that time, however, the children were able to finish their respective grades and are excited for the new school year. Both children are receiving behavioral health services to work on emotional regulation, suggesting past behavioral deficiencies.

The trial evidence showed a history of Father's domestic violence and Department involvement, including incidents in 2014, 2015, 2018/19, 2020, and 2022.[4] Father admitted to previous convictions involving domestic violence. And, Father failed to participate in practically all court-ordered services, although he stated he was currently participating in parenting classes.

---

[4] We detail these incidents in the next section.

Based on the foregoing evidence, the trial court could have concluded Father failed to care for or address the children's physical and emotional vulnerabilities and needs, while the foster parents had shown the ability to do so. Furthermore, the trial court could reasonably conclude, based on Father's history of violent behavior and parenting deficiencies, it is unlikely Father would be able to meet the children's needs presently or in the future. *See In re K.L.P.*, No. 04-17-00253-CV, 2017 WL 4014613, at *5 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op.) (father was unable to meet child's physical and emotional needs because he exposed child to domestic violence and had a history of criminal activity); *see also In re L.M.N.*, 2018 WL 5831672, at *23-24 (children's academic improvement and success in foster placements supported best-interest finding); *In re T.A.S.*, No. 05-15-01101-CV, 2016 WL 279385, at *6 (Tex. App.—Dallas Jan. 22, 2016, no pet.) (mem. op.) (children's behavioral improvement and evidence they had stabilized and were functioning well in foster home supported best-interest finding). We conclude the evidence regarding these factors supports the trial court's best-interest finding.

### b. Emotional and physical danger to the children and history of abusive or assaultive conduct

Father and Mother have a history of abusive or assaultive conduct, demonstrating emotional and physical danger to the children. This case was initiated upon a report of physical abuse of J.W. and V.W. by Father in February 2022. During the initial visit, V.W. was observed with a red-brown area under his eye and on the side of his cheek and neck. V.W. received medical attention. Father was arrested for

injury to a child, and after investigation the Department found reason to believe physical abuse had occurred. In June 2022, Father pleaded guilty to the charge of assault family violence related to the incident.

Father was involved in a 2015 domestic violence incident in Nevada where he hit J.W. and his sister. Father asserted it was a misunderstanding and accidental. The incident also involved domestic violence between Father and Mother. In another 2020 incident, Father slapped J.W. on the chest. Father again asserted it was an accident where J.W. tried to intervene when Father and Mother were "play fighting." Father was also convicted for domestic battery in 2014 and assault family violence in 2018 or 2019. Both incidents involved Mother. Father's current fiancée called police in Nevada and Texas for incidents of domestic violence involving Father. In November 2022, Father pleaded guilty to a domestic battery incident involving his fiancée. Father admitted to multiple convictions for family violence but asserted "me physically putting hands on anybody has never been proven."

The trial court could reasonably conclude from the foregoing evidence Father has a history and pattern of abusive and assaultive conduct against his children and significant others, and there is emotional and physical danger to the children now and in the future. Furthermore, the trial court expressly found Father and Mother engaged in conduct under subsections (b)(1)(D) and (E) of section 161.001 of the Family Code. *See* TEX. FAM. CODE § 161.001(b)(1)(D) (knowingly placing or allowing the child to remain in conditions or surroundings which endanger the

physical or emotional well-being of the child) and (b)(1)(E) (engaging in conduct which endangers the physical and emotional well-being of the child). The evidence above supports these predicate findings, and these unchallenged predicate findings also support the trial court's best-interest determination. *See In re C.H.*, 89 S.W.3d at 28 (proof of predicate acts or omissions may be probative of best-interest findings). We conclude the evidence regarding these factors supports the trial court's best-interest determination. *See In re E.C.*, 2023 WL 8733027, at *11.

### c. Psychiatric, psychological, or developmental evaluations of the child, the child's parents and others with access to the child's home

Father testified he was diagnosed with attention-deficit/hyperactivity disorder, attention-deficit disorder, and bipolar disorder. He stated he does not receive any medication to manage those disorders, but has a prescription for medical marijuana, which he uses for his anxiety and depression.

Velazquez testified Father reported he received mental health services while in Nevada, but he did not provide Velazquez with specifics. Velazquez said Father informed her the Nevada facility told Father he did not need additional services. Velazquez requested Father provide a release for the Department to access the mental health service records, but Father indicated he would obtain the information himself. However, Father had not provided Velazquez any documentation of his visit to the Nevada facility. The trial court did not reference Father's possible mental health issues in its bench ruling or final order. And, the trial record does not reflect

–15–

any evidence regarding psychiatric or developmental evaluations of the children, although the testimony of Velazquez that the children were struggling academically suggests developmental deficiencies. Overall, we find the evidence on this factor neutral with respect to the trial court's best-interest finding.

### d. Parental abilities of those seeking custody

In reviewing the parental abilities of a parent, a fact-finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of their children. *In re C.J.P.*, No. 05-22-00233-CV, 2022 WL 7936574, at *12 (Tex. App.—Dallas Oct. 14, 2022, pet. denied) (mem. op.). A fact-finder may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future. *Id.* (citations omitted).

The trial evidence raises significant questions about Father's parenting abilities. The children were struggling academically when first removed from Father's custody. Since placement in foster care, the children were able to finish their respective grades The children's academic struggles suggest Father is unable or unwilling to keep abreast of the children's educational progress. Velazquez believed Father does not have the ability to properly parent the children now or in the future because Father had not shown any commitment to the case or that he can provide a safe physical environment for the children. Velazquez testified Father failed to participate in parenting classes, individual counseling, drug assessments, and the batterer's program ordered by the trial court after the incident of physical

abuse that triggered this case. Father also failed to participate in parenting, anger management, and family violence classes ordered by the criminal court. Father testified he did not participate in the services because he had no money and is trying to work his way up from the bottom. Father said he is currently taking parenting classes online. He also stated he is working and received approval for Section 8 housing assistance.

Furthermore, the Department's home studies indicated placement with Father's relatives was not possible. Father testified the children could be placed with an out-of-state cousin, C.A. According to Father, C.A. said she would take care of them. However, Father gave C.A.'s name to the Department just a few weeks before trial, preventing adequate time for an ICPC-approved[5] home study.

In contrast, the evidence supports the foster parents (the planned adoptive parents) possess suitable parenting skills. Velazquez testified the children are doing "really well" in the foster home. The children's academics have improved, they participate in extracurricular activities, and they receive behavioral health services. Velazquez described their improvement as "spectacular."

After hearing the evidence, the trial court empathized with Father's difficulties and financial situation. However, Father made the decisions to move out-of-state, and he failed to comply with the courts' prior orders on parenting classes

---

[5] The Interstate Compact on the Placement of Children (ICPC) ensures that children placed out of their home state receive the same protections and services that would be provided if they remained in their home state. *See* TEX. FAM. CODE §§ 162.101-.107.

and other required services. The trial court also expressed Father knew about the potential for C.A. to take the children but did not give the Department sufficient time to investigate. Considering the record, we conclude the evidence relevant to the parental-abilities factor supports the trial court's best-interest finding. *See In re F.A.B.*, No. 05-14-01277-CV, 2015 WL 631165, at *4 (Tex. App.—Dallas Feb. 13, 2015, pet. denied) (evidence of parental abilities supported termination, where mother failed to complete court-ordered services and did "almost nothing" to demonstrate a commitment to improving her parenting abilities; meanwhile, the planned adoptive parent provided child with stable environment).

### e.     Assistance programs, counseling services, and willingness to participate

In a court's best-interest analysis, it is appropriate to consider evidence showing the parent did not comply with the court-ordered service plan. *In re E.C.*, 2023 WL 8733027, at *13. Again, Velazquez testified Father had not provided evidence of participation in any of the court-ordered services for parenting, counseling, drug and alcohol assessments, drug testing, or battery prevention. Velazquez said Father had not demonstrated any commitment to his case. The evidence also showed Father had relocated on several occasions. Father asserted he was having to start from the bottom, could not afford the services, and had difficulty setting up some of the services after relocating. Father asserted he is taking parenting classes.

Overall, the record demonstrates Father's failure to take advantage of services to assist in promoting the children's best interests. The evidence on these factors supports the trial court's best-interest finding. *See id*. (father's failure to participate in the programs ordered in the Department's family service plan supported the trial court's best-interest finding); *In re J.T.G.*, No. 14–10–00972–CV, 2012 WL 171012, *17 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (mem. op.) (trial court's finding that mother failed to complete any court-ordered services after the children had been removed for abuse or neglect also supported trial court's best-interest finding).

### f. Plans for the children, stability of the proposed placement, and support systems

A child's need for permanence through the establishment of a "stable, permanent home" is the paramount consideration in a best-interest determination. *In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). The State's interest in establishing a "stable, permanent home" is "compelling," and a parental-rights termination, when grounds authorizing it are met, serves that goal by permitting adoption. *Id.* Meanwhile, evidence of a parent's unstable lifestyle can support a fact-finder's conclusion that termination of parental rights is in the child's best interest. *In re S.R.*, 452 S.W.3d 351, 367 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Velazquez testified the Department was seeking to be named permanent managing conservator and supported eventual adoption by the foster parents. The

foster parents had been caring for the children over a year at the time of trial, and the Department believed it was in the children's best interest to allow the foster parents to adopt the children. Velazquez stated the children's improvement in the foster home had been "spectacular." The children have improved academically, participate in extracurricular activities, and receive behavioral health services. CASA recommended the children be formally adopted by the foster parents.

Father asked the trial court for more time to get things right and to have his children. Father testified that, in the meantime, the children could go to his cousin C.A. who would take care of them. However, Father submitted C.A.'s name late in the process and without time for a home study. The Department also contacted over thirty relatives and at least one fictive kin to find suitable placements for the children. None of those who responded were able to take the children.

Father said he is his own support system. Father testified he is working and had been approved for Section 8 housing assistance. However, the record also established Father moved several times in recent years—from Texas, to Nevada, to Oklahoma. The trial court recognized Father moved around but failed to keep abreast of the Texas proceedings or participate in and satisfy court-mandated programs. The record also shows as part of the conditions of his community supervision, Father is prohibited from contact with V.W. or any child seventeen years old or younger. Furthermore, the repeated instances of family violence in Father's and Mother's presence discussed above show a highly unstable home environment.

We recognize the best-interest standard does not permit termination merely because a child might be better offer living elsewhere. *See In re W.C.*, 98 S.W.3d 753, 765–66 (Tex. App.—Fort Worth 2003, no pet.). However, when, as here, independent facts illustrate repeated violence, poor parenting skills, failure to comply with court-ordered services, and a lack of home stability, the totality of the evidence supports a conclusion termination of the parent-child relationship is in the children's best interest. *See id.* Overall, the evidence regarding the plans for the children, stability of the proposed placement, and available support systems weighs in favor of the trial court's best-interest finding. *See In re S.R.*, 452 S.W.3d at 367–70 (trial court's best-interest finding was supported by evidence of father's inability to provide a stable environment, his noncompliance with services, and a pattern of domestic violence, in contrast to care and support provided by foster parents which showed children had improved intellectually, emotionally, and socially); *L.Z. v. Texas Dep't of Family & Protective Servs.*, No. 03–12–00113–CV, 2012 WL 3629435, at *10–11 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (best-interest finding supported where father had a history of instability, domestic violence, and criminal activity, and Department planned to have the child's foster family adopt him); *see also In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (sustaining trial court's best-interest finding, where father's "efforts to improve his ability to effectively parent on the eve of trial [were] not enough to overcome a decade of poor parenting and neglect," and evidence showed

–21–

the emotional and physical needs of the children were better met while in foster care.).

### g. Father's acts and omissions indicating the existing parent-child relationship is not a proper one and any excuses for same

A parent's history of assaultive conduct and willingness to expose the child to domestic violence support a finding the existing parent-child relationship is not proper. *See T. W. v. Texas Dep't of Fam. & Protective Servs*., No. 03-18-00347-CV, 2018 WL 4100799, at *6 (Tex. App.—Austin Aug. 29, 2018, no pet.) (mem. op.).

Again, the Department instituted this case after a report of Father's physical abuse of J.W. and V.W. V.W. had visible red marks and bruising on his face and neck and was seen by medical staff. Father was arrested for injury to a child as a result, and he ultimately pleaded guilty to family violence assault. And, as detailed above, the trial evidence showed Father has a history of family violence, including incidents in 2014, 2015, 2018 or 2019, 2020, and 2022. In prior incidents of physical violence against the children, Father excused these acts, claiming they were a misunderstanding or accidental. Father denied taking any real responsibility and claimed physical violence had never been proven in any of his cases involving family violence. However, Father has pleaded guilty to domestic battery or assault more than once, and admitted he has multiple convictions involving physical violence.

Father also failed to participate in the classes and services ordered by two separate courts. And again, Father attempted to excuse his failures by his relocation

and lack of finances. Father also violated the terms of his community supervision, resulting in the State's motion to revoke such. Father is prohibited from any contact with children seventeen years old or under, and at the time of trial Father had a warrant out for his arrest. On this record the trial judge could reasonably conclude the parent-child relationship is not proper and Father's excuses were not believable or sufficient. These factors supported the best-interest finding. *See In re D.B.S.*, No. 05-20-00959-CV, 2021 WL 1608497, at *9 (Tex. App.—Dallas Apr. 26, 2021, pet. denied) (mem. op.) (evidence of mother's instability, noncompliance with services, and patterns of domestic violence supported finding existing parent-child relationship not proper); *In re K.L.P.*, 2017 WL 4014613, at *8 (father's past criminal conduct, which included domestic violence towards mother, supported determination that parent-child relationship was not proper); *see also In re P.P.-S.*, No. 02-23-00309-CV, 2024 WL 123654, at *8 (Tex. App.—Fort Worth Jan. 11, 2024, no pet.) (mem. op.) (trial court entitled to disbelieve mother's reasons for exposing children to domestic violence and failing to comply with her service plan).

### 3) Conclusion regarding best-interest finding

After reviewing all the evidence in the light most favorable to the trial judge's best-interest finding and considering any undisputed contrary evidence, we conclude the trial judge could reasonably form a firm belief or conviction the children's best interest would be served by terminating Father's parent-child relationship with them. In analyzing the legal sufficiency of the evidence, we assume the trial court, as fact-

finder, resolved disputed facts in favor of its finding for termination of parental rights because a reasonable fact-finder could do so in this case. *See In re E.C.*, 2023 WL 8733027, at *15. In analyzing the factual sufficiency of the evidence, we do not find the disputed evidence to be so significant the trial court could not have formed a firm belief or conviction in favor of termination of parental rights. *See id*. Considering the evidence under the applicable standards of review, we conclude the evidence is legally and factually sufficient to support the trial court's finding that termination of Father's parental rights was in the best interest of J.W. and V.W. We overrule Father's first issue.

## II.    Ineffective Assistance of Counsel

In his second issue, Father contends he was denied effective assistance of counsel during the termination proceedings because his counsel did not object to a bench trial, thereby depriving him of the right to a jury trial. We disagree.

### A.    Standards – ineffective assistance of counsel

Our supreme court has adopted the *Strickland* test for analyzing claims of ineffective assistance of counsel in parental termination cases. *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)). Proving ineffective assistance of counsel requires a showing (1) counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which "requires showing that counsel's errors

–24–

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006).

Considering all of the circumstances of the case, we must primarily focus on whether counsel performed in a reasonably effective manner. *Id.* We must give great deference to counsel's performance, indulging a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility counsel's actions are strategic. *Id.* (quotations omitted). Challenged conduct constitutes ineffective assistance only when it is "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). We may not reverse for ineffective assistance "when counsel's actions or omissions may have been based upon tactical decisions, but the record contains no specific explanation for counsel's decisions." *In re K.M.H.*, 181 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (quoting *Bone v. State*, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002)).

### B. Standards – jury trial requests

The Family Code provides for a jury trial upon request. TEX. FAM. CODE § 105.002. Under Texas Rule of Civil Procedure 216, to request a jury trial, a party must make a written request and pay the jury fee at least thirty days before the date trial is set. TEX. R. CIV. P. 216. Unlike in criminal cases, the Family Code does not require an express waiver of trial by jury. *In re K.M.H.*, 181 S.W.3d at 8 (citing TEX. CODE CRIM. PROC. art. 1.13). "[W]hen a party has perfected its right to a jury trial in

accordance with rule 216 but the trial court instead proceeds to trial without a jury, the party must, in order to preserve any error by the trial court in doing so, either object on the record to the trial court's action or indicate affirmatively in the record it intends to stand on its perfected right to a jury trial." *Sunwest Reliance Acquisitions Grp., Inc. v. Provident Nat. Assur. Co.*, 875 S.W.2d 385, 387 (Tex. App.—Dallas 1993, no writ).

## C.     Application of the law to the facts

Here, Father filed a jury demand in his answer to the Department's suit. The record does not reflect payment of the jury free. Father states no jury fee was paid because of his indigence. The record does not reflect an affidavit of indigence to support waiver of the jury fee. *See* TEX. R. CIV. P. 217. However, the record does include the trial court's order appointing Father's counsel due to his indigence. Accordingly, we conclude Father initially perfected his right to a jury trial.

The trial court called the case for trial on July 31, 2023. Father appeared on the record (remotely). Father's counsel also appeared, and the Department called its first witness. Neither Father nor his counsel objected to proceeding with a bench trial. The court recessed the proceedings and resumed them on August 4, 2023. Again, neither Father nor his counsel objected to proceeding with a bench trial. The trial court's order of termination states "a jury was waived." Father's counsel approved the form of the order. Father contends his counsel's failure to object to the bench trial constituted ineffective assistance of counsel.

Under the first prong of the *Strickland* test, to support a claim of ineffective assistance, the record must affirmatively demonstrate the alleged ineffectiveness. *Bermea v. Texas Dep't Of Fam. And Protective Servs.*, 265 S.W.3d 34, 43 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). We may not reverse for ineffective assistance "when counsel's actions or omissions may have been based upon tactical decisions, but the record contains no specific explanation for counsel's decisions." *In re K.M.H.*, 181 S.W.3d at 9. The record here does not provide an explanation for trial counsel's failure to object to a bench trial. Because there is no explanation in the record for counsel's actions, which could have been tactical, there has been no showing defeating the presumption counsel provided effective assistance. *See id.* (in parental-rights termination case, father failed to overcome presumption his counsel provided effective assistance, where record did not provide an explanation for counsel's failure to file a jury request).

Even assuming Father showed ineffective assistance of counsel, Father has failed to demonstrate prejudice under the second prong of the *Strickland* test. Father summarily asserts he was prejudiced by the conduct because a jury trial is a fundamental right. Such conclusory assertions are insufficient to demonstrate prejudice. *In re L.G.D.*, No. 06-17-00061-CV, 2017 WL 4507673, at *3 (Tex. App.—Texarkana Oct. 10, 2017, pet. denied) (mem. op.); *In re L.G.*, No. 07-14-00365-CV, 2015 WL 1477975, at *4 (Tex. App.—Amarillo Mar. 26, 2015, no pet.) (mem. op.) ("*Ipse dixit* is not enough."). Father must show how the case outcome

would have differed but for the alleged failure by counsel. Father has not explained how or why a jury would have declined to find that terminating Father's parental rights was in the children's best interest. As discussed above, the record reflects repeated instances of Father's physical violence toward or around the children, and Fathers' failure to comply with court-ordered services, classes, and testing. The record reflects Father's ongoing criminal issues (e.g., arrest warrant and prohibition on contact with children). The record also reflects the children's "spectacular" improvement in their foster home and plans for adoption by the foster parents. Under this record, Father has not shown how a jury would have reached a different result. Father has not shown how or why he was deprived of a fair trial, "a trial whose result is reliable." *See In re H.R.M.*, 209 S.W.3d at 111. Father has not demonstrated prejudice necessary to support his claim of ineffective assistance of counsel. We overrule Father's second issue.

## CONCLUSION

We conclude the evidence is legally and factually sufficient to support the trial court's finding that termination of Father's parental rights was in the best interest of J.W. and V.W. We further conclude Father has failed to support his claim of ineffective assistance of counsel.

Accordingly, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
231049F.P05                                         JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF J.W. AND V.W., CHILDREN

No. 05-23-01049-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas Trial Court Cause No. JC-22-00097-W.
Opinion delivered by Justice Partida-Kipness. Justices Reichek and Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that APPELLEE recover its costs of this appeal from APPELLANT.

Judgment entered this 29th day of March 2024.